Let's see where we are. Okay, we are at 1820.35 United States v. Brewer. Good I am here today on behalf of Mr. Brewer, and we have raised two issues and a third issue that's a subset of our 404B issue. The first issue that I'd like to discuss with the court is the GPS monitor search. In this case, we challenged the legality of the continued GPS monitoring of Mr. Brewer's car after it left the state of Indiana and traveled thousands of miles across the country to Los Angeles, California. Now, does the geographic restriction in the warrant reflect merely the limits of the state court's reach so that the warrant would not purport to be extraterritorial application or to have, I guess I should say, extraterritorial application? No. In this case, I think what's very important and was actually pointed out by the FBI agent is that there were a number of warrants issued by the same Superior Court judge. All of the warrants did not include the restriction that the warrant on the GPS monitor for the Volvo included. And were all of those warrants based off of the same affidavit from the law enforcement officer? Your Honor, I believe that there were separate affidavits issued. I believe that there were separate affidavits, but I apologize that I don't recall now whether that's accurate or not. Certainly, there was information that the FBI provided as to each vehicle and its alleged connection to Mr. Brewer. Obviously, we haven't challenged those other warrants because the other warrants did not come into play in terms of our case. I ask because the application for the order that's in the record does address, as you've noted, the multiple vehicles where trackers were obtained. But there doesn't seem to be anything in that application that is particular to limiting the reach to the state of Indiana. So I'm wondering if they were all based on the same affidavit, what the basis for the state of Indiana in just this particular one was. They may have been, Your Honor, and I apologize I don't know that answer. Maybe Mr. Holler can This is not a case where we're arguing that the jurisdictional reach of the Superior Court judge in Indiana is what limits the tracking outside of the state. But what would render the search reasonable on one side of the state line and unreasonable on the other? Is there any additional intrusion on the expectation of privacy in movement that's occasioned by extending the search beyond the state line? I believe there is, Your Honor, and that is because not only do we have Jones, obviously, which tells us that GPS monitoring is, in fact, a search under the Fourth Amendment, but in Carpenter, the Supreme Court went so far as to say that individuals have a reasonable expectation of privacy in the whole of their physical movements. And so in each physical movement that the defendant I understand the whole of the movement, but what's the difference in a sense of privacy in Indiana and a sense of privacy anyplace else? Well, I believe that we carry our privacy interests with us wherever we go. Well, but that was violated, if it was violated at all, when he was in Indiana. Well, Your Honor, we didn't challenge the search warrants in Indiana. I am thinking broadly, but I don't care what you tell us. I'm trying to find out what you think the difference is between you being in Indiana and being in Illinois, because the same rationalization would occur if you're talking about Illinois, wouldn't it? Well, Your Honor, I understand the Court's point, except that that is to suggest that... Is it true that Indiana and Illinois are being changed? It's still the same rule that you're proposing would shut off anything in Illinois? Well, I do think it's a difference, Your Honor. First of all, if we have an expectation of privacy in any place, in our person, as we move from place to place and location to location, we continue to have that expectation of privacy. So you're saying that if you want this that occurred with the device still in effect in Illinois, it wouldn't make any difference? I do think it makes a difference, because I think as we move away from the ground... So Illinois is the same as California in your analysis? Yes, Your Honor, I would say it is, because the problem that we have when we start to impose this slippery slope that the government seems to suggest we should about how slight the movement is, how far we go, I think that we get into a point where where do we draw the line? Do we draw the line at the Michigan border? Do we draw the line at the Nebraska border? Do we draw the line as we enter California? But the reality is, is that because there is an expectation of privacy, which requires the issuance of the warrant, by law, the law enforcement officers who are in fact invading that privacy, of course, by the justification of the warrant, have to follow the parameters of the warrant. I would give another example, for example, let's say we have a... If I understand you correctly, the warrant is issued, his privacy is being violated, but it stops at the border. Now he has no expectation of privacy where he is, but once he crosses the border, the expectation of privacy kicks back in. I would disagree with the premise of the statement, Your Honor, because the expectation of privacy doesn't go away. I know. It never goes away. It's either gone, but if it's gone in the beginning, it's either gone in the beginning and it's gone forever. But what allows the Fourth Amendment, what the Fourth Amendment sanction that allows the law enforcement officer to invade that privacy is the warrant. And in this case, the warrant limited that invasion to Indiana. And so the parameters of the warrant are what define what the law enforcement officer may do. I'll give an example. We have an individual who lives in House A and a search warrant is given for House A. That doesn't mean that the law enforcement officers can say, hey, it looks like he's hanging out at House B, let's go search House B. Even though those officers may make observations of that activity, they would have to go back and they would have to obtain a warrant. With Carpenter Rule... He was given a warrant for the arrest and he watched him go into his own house. Did they follow him in? But we're talking about a search. We're not talking about an arrest. So we're not talking about hot pursuit. We're not talking about... I'm not either. Well, that's true. To go in and arrest, there would have to be a warrant under most circumstances. But the point is, is that... The arrest is right on the front porch if they had the warrant. But the warrant didn't allow them to go in the house. That's exactly right. Even though they'd see that person, they still have the same interest in the arrest. Does that make sense to you? I'm sorry, Judge, I didn't hear you. Does that make sense to you? I think it does because we draw lines in terms of protecting our privacy. I didn't ask you to make sense, Your Honor. And it makes sense under our Fourth Amendment jurisprudence because we recognize privacy interests and we protect those privacy interests and require that the warrant, that the four corners of the warrant, be, in fact, observed by law enforcement. How do you get around Cass' decision that said that the Fourth Amendment doesn't concern state borders? The Constitution is what defines the constitutional rights. And it was a not identical, but similar factual scenario. I do think it gets around in two ways, Your Honor. In Cass Sutter, first of all, I think that it's been cited somewhat over broadly. Because in Cass Sutter, the person who was challenging the search was a homeowner who information gathered as a result of the GPS tracking was used in that affidavit to justify the search warrant. There was no standing for that individual to challenge the previous search. So I would suggest that in Cass Sutter, the language about the jurisdictional requirements of, in that case... But the court went beyond standing. The court did address it on the merits. The court did. The court suggested that it would not be bound by state law concerns. That is not what this case is. Because we are not arguing, for example, that the warrant is invalid outside of the state of Indiana because of the state law limitations on the Superior Court Judge's authority. That is not what we are arguing. This is an unusual case. Because the warrant actually limited the search beyond the borders of the state of Indiana. The government has cited some cases in its brief, Faulkner and Sims come to mind, that in fact said some years ago that we would not consider state law considerations in determining whether there was a Fourth Amendment violation. I believe in one case there was the placement of the GPS in a county different from that authorized by the search. In another case there was travel, I believe, from Texas to Alabama. We have to remember that those cases were decided before there was a Fourth Amendment declaration. Faulkner wasn't, was it? Faulkner was after Jones. Jones was 2012. Faulkner was 2016, I believe. I'm talking about the state court Jones. Okay. So I'm talking about, there's two different Joneses. I'm talking about the state court Jones that relied on the issue of whether or not they would be constrained by the jurisdictional authority of a state court judge. Now look, because time is moving very fast, would you be kind enough, please, to talk about whether the government properly established a foundation to introduce the videotape showing Brewer in the bank hours? Yes, Government Exhibit 25, Your Honor. Okay. Um, they did not. As often happens in the practicality of trial, the witness testified that it appeared to her that the video that was offered by the government regarding the 404B robbery in Ohio depicted what she recalled as happening that day. However, it became clear during additional direct as well as on cross-examination that the witness did not, in fact, did not, in fact, recall seeing the individual who was depicted in the video and could not identify the specific day that she had waited on the other customer who she was familiar with. So she was unable to lay the foundation for the admission of that video. Why isn't that a wait issue? Because she did testify that she had reviewed Exhibit 25, that it truly and accurately depicted what happened that day. And then on cross-examination, the judge said that there could have been some confusion going on. Why isn't that an issue of wait for the jury to make a determination on, as opposed to admissibility, because she already said it truly and accurately depicted what happened that day. We don't know when that video was actually taken. So if, in fact, it was taken five days previous to the date that seemed to appear on the corner of the video, without it being established that, in fact, it happened on the day in question, we have a relevancy problem. And under the analysis that happens with 402 and 403, they cannot establish, in fact, that that the day it took place, was that even raised below? Yes. In fact, it was raised whether or not that happened on that day. And I've quoted in my brief, Your Honors, I believe it's on page 20, 30, that, in fact, in response to my questioning regarding the ability of the teller to verify that, in fact, that video was from that specific day, her response was, I mean, there is really nothing to distinguish between that day and any other time that he comes in. She was referring to what gave her some recollection, and that was the regular customer who she testified came in two to three times a week. I think that was a woman, actually. Was it a regular customer? Yeah. Wasn't it a woman? I believe it was a male. Well, never mind. It doesn't matter. The teller was a female. Well, yeah, I know that. The teller was a female. But the point was that the witness could not, in fact, establish the foundation by any means of the relevancy of the video. Thank you. I'd like to save it. Okay. Okay, Mr. Huller. Good morning, Your Honors. Good morning. May it please the Court. I really want you to get right into that issue. The foundational issue? Yeah, because the teller testified she had no independent recollection of waiting on the customer in the mid-video, specifically on the morning of April 29th. And what I want to know is why doesn't this teller have any recollection of the customer's presence? Does that render her testimony insufficient to establish the foundation for admission of the video? In other words, what testimony would establish that recalled the events and the date and the time of those events, independent of the video? Well, Your Honor, I think that there are certainly arguments both sides for the admissibility of this video. The standard of review is abusive discretion with particularly wide latitude for the district court. And those arguments certainly would have justified you as a trial judge to exclude the evidence. However, reviewing this now at the court of appeals level, I do believe, as Judge St. Eve pointed out, that there was testimony on both sides. Her initial direct examination testimony, beginning on page 364, was that she had reviewed the video. That it fairly and accurately depicted the events as they happened on that day and around that time. And what typically happens when you are dealing with testimony from lay witnesses is they don't, perhaps, always understand all of the foundational requirements and all of the rules. But she then again testifies, do you recall somebody on page 365? Do you recall the gentleman coming in the bank? Yes, I'm familiar with him. Do you recall the other individual, Mr. Brewer, in the bank? I do recall somebody entering into the bank. She's recalling this day. She's recalling this. And this was a very specific day. It was the day that the bank was robbed, which isn't something that occurs every day. Did she remember the specific time? But she repeatedly indicated that her recollection was based on the video, not on her own independent recollection. She contradicted her own testimony. Well, I think the question is, what did she mean by her testimony, Judge Roedner? And I think the fairest interpretation of the testimony that I can come up with, that we've been able to come up with, is what she was essentially saying is her memory is refreshed by the video. Does she have an independent recollection, independent of the video? Would she have recalled that customer coming in? Would she have recalled that interaction? No. But you can refresh a witness's recollection from the witness stand by showing them things and having them say, yes, I remember that. But look, defense counsel said, but you have no independent recollection of waiting on him, specifically in the morning of April 29th. She responds, correct. And that is the only direct question that she answered that way, too. And this incident did not occur on the morning of April 29th. It occurred on the afternoon of April 29th. And so under these circumstances, on an abusive discretion review, where a possible interpretation is that the witness was either A, confused, or B, doing her best to answer some very pointed, diligent cross-examination as accurately as possible, I absolutely don't remember him coming in that morning. He came in that afternoon, but I don't remember him coming in the morning. Maybe he did. See, to me it's rendered problematic because he wasn't convicted or even charged with a state bank robbery. So the date of his presence in the bank is critical to the relevance of that video. I think the date is critical. I don't think the specific time is critical. I do agree with you that the date is critical, but you put the pieces together. Regardless of what time he came in, he's then seen some other time that day at the auto zone across the street, loitering and urinating. And so putting all of those pieces together, I do think it matters. Was there any testimony? Did an agent or somebody else come in and testify to chain of custody and how they had obtained this video from the bank and it was obtained on or about that particular day? No, because the district court admitted it based on this testimony. This information, this bank, as you know, was in Ohio. It's a suburb of Toledo, Ohio. And we did not have anyone at the ready. We would have either had to recess the trial for a day and bring someone from Toledo to do that, or forego admission of the tape. Was there any issue raised with respect to the foundation of this exhibit in a motion to eliminate or in advance of trial? No, Your Honor. Could we go on to the Banner Bank robbery? Doesn't that robbery lack the distinctive behavior that would provide a basis for a modus operandi argument, such as entering the bank the day before, requesting unusual forms of currency, using a stick to prop the front door open? Because if we're left with merely casing the bank prior to the robbery, disguising themselves, and using a getaway car, how would that all be dissimilar to any other bank robbery? Judge Roeder, these were very distinctive robberies. The mere presence of the stick, I think, alone is distinctive, frankly, for that matter. A stick being dropped at the entrance to the door. Mr. Brewer wants to make it... Without the opening, without the holding of the door. Well, regardless of whether the door was held or not, other than these five robberies, I'm not sure I've seen a report of people dropping sticks at the door. The defendant wants to make a big deal about the fact that in this particular instance, the stick didn't end up between the doors. But I think that's a distinction without a difference. If you look at the cases we cited in our brief, things as simple as they rushed the bank and carried a .44, which isn't a particularly uncommon gun, that was enough. Was that pre-Gomez, though? I'm sorry? Was that pre-Gomez? They were pre-Gomez, but Gomez, Your Honor, specifically cites modus operandi as being still valid evidence. And I don't think that Gomez calls into doubt any of these cases. As for the fact that he didn't walk into the bank and ask for currency, that's the entire point of why this evidence is relevant, Judge Roedner, because their argument was, on the three Indiana bank robberies, he's just going into the bank and asking for currency. But in this robbery, and in the Ohio robbery, he didn't do that. He found a different way to case the bank, rather than by walking in and making a request that's going to cause the tellers to scurry around looking for something they don't normally do. And these are very distinctive robberies. If you watch the videos of these robberies, this is a fairly distinctive figure, completely covered, shrouded, head-to-toe, rushing into the bank, carrying a black bag, dropping a stick at the door, whether it lands in the door or not. Approaching silently, covered, completely, in a ski mask or other document, holding up a note, not speaking, running out, and jumping into a waiting car. Under the court's precedence, which we don't believe are... You are terrifying me. They're kind of terrifying videos, if you've seen them. They're very odd and disturbing. Any bank robbery. Right. Well, all bank robberies are terrifying, but these are unique, and they're distinctive, and that was the entire point of the Banner Bank evidence, which was plainly admissible under 404B for that reason, as was the Ohio robbery, similarly. Why don't you go into where we were when we started our discussion with Ms. Conner about the geographic restriction and the warrant? Sure. If I could just go back to, I think, first principles. The first principles are Fourth Amendment requires three things. Neutral magistrate, probable cause, particularity, meaning particular description of the place to be searched and the thing to be seized. The example that my opponent gave, if I have a warrant that says I can search this particular place, House A, I can't then go and search House B, no matter how much I think that I have probable cause for it. I have to go back to the magistrate. But what the Supreme Court said in Richards, what this court said in Martin, is if you've got those three things, then if there's other things that the warrant says you have to do and you don't do them, that's not right. We shouldn't be doing that. That's negligent behavior, but that doesn't violate the Fourth Amendment, and the Fourth Amendment is what triggers the exclusionary rule. As long as you stay in the box, here we had a neutral magistrate, here we had probable cause, and here we had a particular description of the place to be searched, the Volvo, and the thing to be seized, its geographic location. None of those things dissipated when that car crossed over State Line Avenue from Indiana to Illinois, and none of those dissipated as the car kept driving all the way to Los Angeles to commit the additional bank robbery. And because of that, this case essentially is the same thing as Martin. In the Martin case, the warrant expired, so the defendant in that case, the magistrate found there was probable cause, put in a time restriction, the time restriction expired, we violated the time restriction, shouldn't have happened, but we did, but it didn't violate the Fourth Amendment, and that means the exclusionary rule is not triggered. Is there any suggestion here that the fact that the vehicle was in the state of Illinois was part of the probable cause determination? Yes, if you look at the affidavit, and the affidavit is in R37 Exhibit 2, the application is on page 2 of R37 Exhibit 2, but it's the first page of the application. Officer Gutti's affidavit describes all the robberies, and that includes a robbery of First Merchants Bank in South Holland, Illinois, the robbery of the Ohio Bank that we've talked about, State Bank and Trust Company in Perrysburg, Ohio, and a robbery of a TCF Bank in Oak Lawn, Illinois. So you're saying that would take it outside of Indiana? Well, there's plenty of evidence that they were already robbing banks outside of Indiana, so there's plenty of probable cause to suggest that tracking their vehicle is going to show information outside the state. And Agent Peasley did testify that he had received prior warrants in this investigation, and although it's not in the record, I believe they were warrants for the other two cars. They were warrants for the Impala and the Corolla. Do you know if it was based off of the same affidavit that's at R37-2, or was there a separate one? You know, my understanding of the way these investigations work, and I would have to verify this, is they basically have got it in the computer, and then you just add on, you just keep adding information as it comes in. I think if I go back and look at the warrants, it looks like that's what happens, but those warrants are not in the record, so that's outside the record, Your Honor. Given that these were bank robberies under the FBI's jurisdiction, why did law enforcement go to the state court in the first place and not go to a federal magistrate judge? I'm not sure why they did that, Your Honor. I think they were going back to the judge they had gone to before, and I think also, just at least in our jurisdiction, timing-wise, it's often you can get a state magistrate 24-7, and it's – well, you can get a federal magistrate 24-7 either. I don't want to make that point to her, but it can be easier to get one. I think that's why it was done. I mean, look, I think it would have been – obviously, if we had gotten a warrant from a federal magistrate – well, I mean, if we had gotten a warrant from a federal magistrate, we would have less of an argument here, but the federal magistrate could have put in the same restriction, for all we know. I don't know why the restriction was put in, frankly. It may have been a typographical error. Have you ever seen a federal magistrate do that? Put in a restriction? Of geographic? I have not. No. But it looks to me, from the form warrants that I've seen – and really, it's kind of an awkward phrasing here, because it says, in the state of Indiana, or in any jurisdiction, it almost looks, from the form warrants I've seen, like it's things you're supposed to strike out. This could be a typographic error. This could be somebody putting something in that they hadn't before because they became concerned about something. I'm not really sure. As far as we know, there isn't any Indiana law about whether these can be applied extraterritorially or not, and some states have said you can do these. We've only been doing these GPS warrants, frankly, for six years, so we don't have a lot of experience with them. Some states have said they can apply them extraterritorially. Some states think, as a matter of state law, that you can't, and I don't believe there's been any litigation about this in Indiana. So certainly, the agent who got two warrants that applied extraterritorially, I think, just – and this wasn't pointed out to him, like, hey, I've changed the warrant from the state judge. I think it was just missed, so it's unfortunate that that happened, but that is what occurred here. Castator does apply. The Fourth Amendment does not concern state borders, and so consequently, as a result of that, we believe that this complies with the Fourth Amendment. For the reasons that I've already stated, we do believe that the 404B evidence was properly admitted and that we did sufficiently authenticate the Ohio exhibit. If the court disagrees and thinks that the Ohio information was insufficiently admitted and that that Ohio evidence should not have come in, we would, again, submit that that was harmless error. That it's in light of the evidence of the Indiana robberies and the evidence of the California robbery, which is not implicated at all by the authentication issue, that the evidence from those four robberies alone would have been overwhelming and that the addition of the Ohio robbery would not have changed the calculus at all. So if the court does have authentication concerns – and we do believe that, at least under the wide latitude abuse of discretion standard of Eberhardt, that that is sufficient. But if the court felt that it was not, certainly as an alternative ground, we think that there just was no – one time walking into a bank and somebody robbing it in this distinctive fashion after is a coincidence. Two, you should probably start playing Powerball. And three, there's no possible excuse other than that she gets it. Give me the numbers. Right. Well, but the point is that from that alone and then the combination of him being arrested under the same circumstances and the same kind of robbery in California, those together taken would be more than enough, even absent the Ohio robbery. If the court has no further questions, we would just ask that the judgment be affirmed. Thank you very much. Thank you. Ms. Conner. The 404B issue is really a very important one for a lot of reasons. The admission of the Banner Bank was crucial because it was very clear in that case, though the jury didn't hear that there was a conviction, that in fact the individuals were arrested. It was very clear. We moved to actually exclude that information and the court said no. In the Ohio bank, obviously the significance of it was the connection between Mr. Brewer potentially being in the bank and seeing Mr. Brewer with the vehicle. And so to suggest that either of the admission of those matters would be harmless is simply not accurate. They had an overwhelming effect on the trial because the three bank robberies that Mr. Brewer was charged with, he was never seen participating in any way as a driver otherwise. Wasn't there evidence seized from where he was living, though, that linked him to that vehicle? There was clothing. The title. There was a title. The title actually in the ones that issue, I don't believe, was in his name. It was in someone else's name. There was also information that there was another man and woman living in that house. But I would emphasize, Your Honors, that early and throughout this trial, there was problems with several videos that the government attempted to put in. On the very first bank, there was some street videos from various entities that the government did not get in because, in fact, they were not able to lay the proper foundation. I mention that only because the government is suggesting that this was somehow a surprise to the government, that there would be a problem with their admission of the evidence. In fact, one of the businesses that they attempted to get in a video related to the very first bank robbery did not come in because of lack of foundation. So it is the government's responsibility to lay the foundation for its evidence. The defense could not possibly, and Lemonet had anticipated, that the government was not going to present appropriate witnesses to get that evidence in. Under these circumstances, Your Honors, they did not lay the foundation to introduce the Ohio bank robbery. And therefore, a reversal is required because of the 404B effect. Thank you. Thank you very much. Thank you very much. Really such wonderful arguments today. Wow. Okay.